UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RONNIE L. COUSIN (#89334)                                         CIVIL ACTION

VERSUS

TIM DELANEY, ET AL.                                               NO. 14-0076-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 23, 2015.

                                        RICHARD L. BOURGEOIS, JR.
                                        UNITED STATES MAGISTRATE JUDGE

RONNIE L. COUSIN (#89334)  CIVIL ACTION

VERSUS

TIM DELANEY, ET AL.  NO. 14-0076-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 21). This Motion is not opposed.[1]

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Ass't Warden Tim Delaney, Ass't Warden Joe Lamartiniere, Secretary James LeBlanc and Maintenance Supervisor Mr. Lemoine, complaining that the defendants have subjected him to unconstitutional conditions of confinement at LSP, specifically by forcing him to live in a housing unit which is provided with inadequate lighting.[2]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell*

---

1. In an initial response to the defendants' motion to dismiss, the plaintiff filed a motion for leave of Court to amend his complaint. *See* R. Doc. 24. However, whereas a plaintiff is entitled to amend his complaint without leave of court in response to a motion to dismiss, *see* Fed. R. Civ. P. 15(a), the Court denied the plaintiff's motion because he had failed to provide a proposed amended complaint for the Court's review. *See* R. Doc. 28. The plaintiff has not made any further attempt to amend his complaint or to respond to the defendants' motion.

2. In the original complaint, the LSP Maintenance Supervisor, "Mr. Lemoine," was also named as a defendant, but the plaintiff has since voluntarily dismissed this defendant from these proceedings. *See* R. Docs. 14 and 16.

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that since October, 2012, he has been housed at Camp C Tiger at LSP and has been deprived of adequate cell lighting. He asserts that all of the lights on his cell tier are wired to a single circuit and that, as a result, "no individual cell light can be turned on without all of the cell lights on the tier coming on." The plaintiff further alleges that, "because of this the cell lights are never turned on for in-cell usage, leaving plaintiff to perform his legal task[s] in the dark .... [and] to read and write in the darkness of the cell," allegedly causing the plaintiff to suffer from "migraine headaches, blurred vision and sharp pain behind his eyes."

In response to the plaintiff's allegations, the defendants first contend that the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is not properly before the Court. Although the plaintiff's Complaint is unclear as to whether he has named the defendants in their official and/or their individual capacities, the Court liberally interprets the plaintiff's *pro se* Complaint as naming the defendants in both capacities. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Notwithstanding, § 1983 does not provide a federal forum for a litigant seeking monetary damages against a state official acting in an official capacity because such official is not seen to be a "person" under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity claims and made clear that a claim asserted against a state official in an official capacity for monetary damages is treated as a claim asserted against the State and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants

in their individual capacities remains theoretically viable because a claim for monetary damages asserted against a state official in an individual capacity, seeking to impose *personal* liability for actions taken by the official under color of state law, is not treated as a suit against the State. *Id.* In addition, the plaintiff asserts herein a claim for prospective injunctive relief, and such a claim asserted against a state official in an official capacity is not prohibited under the Eleventh Amendment because such a claim is also not seen to be a claim against the State. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 *Am. Jur. 2d Civil Rights* § 101. Thus, there is no jurisdictional bar to the plaintiff's claim for equitable relief asserted against the defendants in their official capacities.

Turning to the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities and for prospective injunctive relief asserted against the defendants in both their individual and official capacities, the defendants next assert that they are entitled to qualified immunity and that the plaintiff has failed to allege facts suggesting that the defendants have subjected him to unconstitutional conditions of confinement or that they have been deliberately indifferent to his health or well-being.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a

constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion should be denied. Specifically, the Court finds, at least at this juncture, that the plaintiff's allegations are sufficient to state a claim that his constitutional rights have been violated by exposure to unconstitutional conditions of confinement – of which the defendants are allegedly aware – in the form of inadequate cell lighting. Specifically, interpreting the plaintiff's allegations liberally, he asserts that the available lights in his cell are rarely turned on by prison officials, resulting in there being insufficient lighting in his cell and resulting in his being required to live under conditions that subject him to an inability to read or to perform necessary legal work without headaches and substantial discomfort.

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

The United States Court of Appeals for the Fifth Circuit recently stated, in upholding a claim for injunctive relief by inmates relative to, *inter alia*, inadequate lighting in their cells:

> The Eighth Amendment dictates theat cruel and unusual punishment shall not be inflicted, and it is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.
> The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Prison officials must provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure[s] to ensure the safety of the inmates. This circuit has worded the test as requiring extreme deprivation of any "minimal civilized measure of life's necessities." Further, mental health needs are no less serious than physical needs. The Supreme Court has made clear that the standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society" and not the standards in effect during the time of the drafting of the Eighth Amendment.
> A prison official has violated the Eighth Amendment when he 1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.
> Conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. The Supreme Court has noted that "the length of confinement cannot be ignored.... A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."

*Gates v. Cook*, 376 F.3d 323, 332-33 (5th Cir. 2004) (citations omitted). In *Gates*, the Court upheld an award of injunctive relief compelling prison officials to upgrade the lighting in the plaintiffs' cells to a level of twenty foot-candles. In doing so, the court noted that the trial court had apparently considered and credited evidence that the lighting in the inmates' cells was "grossly inadequate for the purposes of sanitation, personal hygiene, and reading, that this condition also contribute[d] to further mental health deterioration, and that twenty foot-candles was the appropriate minimum level at which these activities could take place." *Id.* at 342. This

finding is apparently consistent with the lighting standards recommended by the American Correctional Association ("ACA"), and although ACA-recommended standards do not establish a constitutional minimum for the purpose of determining whether an inmate's constitutional rights have been violated, other courts have considered these standards in evaluating the claims of inmates relative to alleged inadequate lighting. *See, e.g., Grenning v. Miller-Stout*, 739 F.3d 1235, 1241 (9th Cir. 2014); *Bolton v. Goord*, 992 F. Supp. 604, 622-23 (S.D.N.Y. 1998); *Tillery v. Owens*, 719 F. Supp. 1256, 1271 (W.D. Pa. 1989).

In the instant case, the plaintiff asserts that, although light fixtures are provided in each cell, they "are never turned on for in-cell usage, leaving plaintiff to perform his legal task[s] in the dark" and causing the plaintiff to suffer "migraine headaches, blurred vision and sharp pain behind his eyes." The Court finds that these assertions are sufficient to state a claim of potential constitutional dimension.[4] There is no evidence in the record to refute the plaintiff's contentions in this regard, no evidence to show whether and to what extent there may be light emanating from the hallway adjacent to the plaintiff's cell or emanating from nearby windows that may provide adequate alternative lighting and, if so, the foot-candle of the lighting that is provided from those alternative sources. Courts have found that a failure to provide adequate light may amount to a violation of an inmate's constitutional rights. *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003), *overruled on other grounds, Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009); *Hoptowit v. Spellman,* 753 F.2d 779, 783 (9th Cir. 1985) (concluding that "[a]dequate lighting is

---

4. The Court rejects the plaintiff's contention that the cells in his housing unit must be re-wired so that the lighting in each cell can be separately activated. The pertinent issue in this case is not whether the lighting in the plaintiff's housing unit is on a single circuit but whether prison officials fail to employ the available lighting so as to provide the plaintiff with lighting in his cell that meets a constitutional minimum.

one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment"). Accordingly, in the absence of any available evidence to refute the plaintiff's contentions, the Court finds that the defendants' motion to dismiss should be denied.[5]

## RECOMMENDATION

It is recommended that the defendants' Motion to Dismiss (R. Doc. 21) be granted in part, dismissing the plaintiff's claims for monetary damages asserted against the defendants in their official capacities, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on January 23, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

5. To the extent that the plaintiff's Complaint may be interpreted as asserting a claim regarding the failure of prison officials to investigate his administrative grievance, it is well-settled that such an assertion does not state a claim of the violation of a constitutional right. See *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, the Court declines to devote attention to consideration of this claim.